The procedural development of this case is unusual, but the principles which we will argue today have broad application. The unusual aspect of this case is that the 2004 offense of use of the mail for attempted extortion was fully investigated and fully set forth in the government's brief and the pre-sentence report filed in front of Judge Morrow, who sentenced the appellant to a term of 125 months in 2005. Later, the 2004 attempted extortion charge then became the subject of a separate indictment, which is the subject of this appeal. The resulting consecutive term of 60 months was an impermissible manipulation of the sentencing guidelines. Breaking down pending cases for seriatim indictment invites piecemeal sentencing. Piecemeal sentencing is a recipe for a total combined sentence which far exceeds the intended formula set forth in the guidelines, in which the guidelines are designed in part to prevent. In this situation, we rely on two basic principles which we advance to this Court. First of all, it should be presumed that Judge Morrow in 2005 conformed that sentence to the requirement that all prior conduct be taken into account. That's mandatory under 18 U.S.C. 3553. It requires that the sentencing court take into account all of the defendant's prior criminal history. This was fully set forth to Judge Morrow, and there was no reason for her not to take that into account when she departed upward to the tune of something like 40 months to account for his uncharged or undercharged prior record. That was in 2005. If there is such a presumption, which we feel is proper, it deprives the later court, Judge Schiavelli, from imposing another 60-month sentence. Yes. Even if you had a presumption, Judge Morrow specifically negated it by saying that she specifically wasn't taking it into account, and therefore you're left with a proposition that she did even though she said she didn't? I hate to put it that way, but, yes, there's some things that the sentencing court just can't do, and one is to wall off various parts of the defendant's prior record, kind of preserve them like a bug in amber so that later the government can melt them down and use them for a full consecutive term later where they wouldn't have been able to do that in 2005. So we feel that the statute does have a presumption against that. But my second question is, if it has presumption against that, then how do you overcome the presumption other than by saying, I'm not doing it? Well, you're not saying presumption. You're saying conclusive presumption, i.e., you always have to regard the judge as having taken into account anything she knew about even if she said she didn't. Yes. Now, let me take on the second principle, though, is let's take the other side of the argument. What do you do? Well, on the first principle, you're talking about prior criminal activity. This activity occurred after, afterwards while he was incarcerated. Is that right? It took place prior to the 2005 sentencing. Prior to the sentencing, but not prior to the crime. That's correct. But the whole underlying policy, or much of the policy of criminal sentencing is to provide deterrence. So what you do for repeat offender, it's someone who's been sentenced and served their term, then you increase their sentence for repeated misconduct. But the original sentence in the sentencing judge did the upward departure on factors unrelated to this incident case. Is that right? Well, we argue differently. We think the record is ambiguous. She stated both. Maybe it was a Freudian slip. I don't know. But it looks to us like she took it into, that it did influence her. But I would like to suggest that you can't. Well, she started out saying she was required to take it into account. Yes. And where is that? Where is that? Yeah. What? 18 U.S.C. 3553, quote, the Court, in determining the particular sentence to be imposed, shall consider the nature and circumstances of the offense and the history and characteristics of the defendant, unquote. There's no provision in the statute or in the guidelines to not do it. And but I'd like to say that her sentence was unlawful if she didn't consider  I can't challenge that aspect of it now. What I would like to do, however, is I'm going to tell you, you probably don't want to. Beg your pardon? Not only that, but you probably don't want to challenge it. Well, I But if she can't challenge it and she didn't take it into account, then aren't you out of luck in this case? Well Because all you're proving is that that sentence was unlawful, but that doesn't help you here if she didn't take it into account. Well, that's why I'd like to go on to the other aspect, because I gather from the Court's comments it may be concluded that she did set it aside. Well, at least we have no basis for concluding otherwise. I mean, there was just no basis for it. That's the problem. I mean, when someone says they're, very specifically, they're not doing something, unless you call them a liar, there is nothing you can do about it. Fine. Let's assume, though, that that is what happened and that was an authorized sentence. The question then should be to Judge Schiavelli in 2007, what additional effect  would that have had on the 2005 sentence, had it been considered? In other words, he should put himself in her shoes. If you don't do that, you are creating a situation where the government can file seriatim indictments. Each one replicates the one before. Each one Xeroxes the pre-sentence report, including all of the prior record, and yet the defendant has not re-offended after a prison term. That's not a lack, clearly not a lack. But I'm not understanding what you're saying. I mean, here he did commit a completely separate crime while he was in custody, and a rather serious one, in fact. And you're suggesting that that had to be considered as part of the earlier crimes for some reason? Yes. It was part of the uncharged or undercharged conduct that was before the court that was available in 2005. Now, if it wasn't considered, fine. Judge Chiavelli in 2007 then has to rewind the clock and consider it in light of the circumstances that existed in 2005. If you don't do that, you're going to be in trouble. Is there any reason why Judge Morrow couldn't have given him essentially a consecutive sentence because of that, this additional crime, had she chosen to do it? Had it been indicted, that would be perhaps a different situation. But, no, I believe that the total sentence would not come up to a 60-month consecutive sentence. There is a ---- Isn't there a real gripe here, and it's a gripe, but I don't know what you do with it, that it wasn't indicted at that point, that the indictment was delayed? That's yes. That's very ---- Is there any legal authority or hook for the delay in the indictment? Any legal authority, no. On what basis are you challenging that directly? No. Beg your pardon? Are you challenging directly the fact that the indictment was delayed? We are pointing to it and we ---- As affecting the sentence, but not as being a problem of its own. Well, we think it was deliberately manipulated. As far as we can tell, the government has said that they needed another two years to investigate it, but there's ---- you can read the offenses. But what I'm saying is you are not challenging the conviction on the ground that the indictment was delayed. No. No. So then what do we do with that next? Well, what we do is, if you're in Judge Chiavelli's situation, what you need to do is turn the clock back and sentence as if all of this conduct were properly before the Court in 2005. If you don't do that, it encourages the judgment. But then you're saying that there is to be no sentence for a crime that you acknowledge he can be tried on, convicted on, but shouldn't be sentenced because that should have been done in the prior proceeding. Well, the other way to look at it is to, again, to look at it through Judge Morrow's eyes. How would it have been computed in 2005? And there is a provision in the Guidelines that Section 3C1.1, that would be where he, say, instead of extorting this criminal defense attorney, that instead he had extorted a witness in that case. Now, that's not a perfect analogy, but I think he would be – that's also serious conduct. Well, it really isn't, because this is a completely separate, unrelated crime, except that he was in custody. But, you see, then you have to go back to what Judge Verzon said earlier. If that's your position, that they couldn't give him any separate punishment for this crime because it had to be part of the punishment in Judge Morrow's proceedings, then you're arguing that he shouldn't have been indicted or convicted. You can't say, yes, indict him and convict him, but you can't punish him. Well, maybe there's something I'm not following. We think he should have been indicted and convicted in a timely manner, number one. But if he wasn't for any reason, then the government shouldn't just ratchet up each successive sentence. There could have been many more of these. There was another – there were several other offenses that could have been – Well, but that's because he keeps committing crimes while he's in custody. That's a good reason for it. Well, he's gotten 40 months on the – out of the 125 months for his uncharged conduct. And that is – I'm not following that. Can you explain to me what you mean by that? That accommodates this. I beg your pardon? I don't understand what you mean by that. I'm sorry. I don't – could you explain that? I don't understand what you just said about that. I – well, the court was making, apparently, a feeling that he is – But what uncharged conduct did he get? He got 60 months because that was the statutory minimum, maximum, right? No, I'm sorry. In 2005, he received a upward departure that was substantial. I think it was about 40 months. For uncharged conduct, but not this conduct. Well, I understand you don't believe that. We disagree with that. But apparently, you know, if the court says, okay, that was – that was properly set aside. I mean, there certainly was substantial other uncharged conduct. Yes. It's not as if it was off the wall that she could have been giving that amount of time for that – for the other conduct other than this conduct. She was substantially punished for it. That's my point. Let's assume that Judge Morrow told the truth and she did not consider this conduct before. What could the sentence have been? The – What would a proper sentence have been in the final case, in your view? In my view, I think that Judge Schiavelli should have modeled a sentence along the lines that I've suggested and that it would fall somewhere in the range of a two-level departure, which on this formula would give him a – an additional sentence of about 18 months, not 60 months, which is what he received. And that that would be a – one appropriate use of the court's discretion. It could also be zero, but it shouldn't be 60 months. If it were, we could have this duplicated and replicated almost indefinitely. What was the minimum sentence in the – for Judge Schiavelli that he could have given under the statute? I don't know. I haven't seen any reference to a minimum sentence. Thank you. I'd like to reserve the rest of my time. It says – Your overtime. Thank you. We'll give you a minute or two to get a minute. Thank you very much. Good morning, Your Honors. Ronna Katzenstein on behalf of the United States, and may it please the Court. I'd like to begin by addressing the contention that there was dual use of the facts underlying the extortion in 2004, that notwithstanding Judge Morrow's statement that she did not include that extortion in her analysis leading her to depart upward in criminal history category, that notwithstanding her statement, counsel contends that she in fact did that. I'd like to point out that, first, the Court, Judge Schiavelli addressed this claim. He rejected the claim. His rejection of the claim was amply supported by the records. He explained why he had rejected the claim. He said that he had reviewed the transcripts and that he had read what Judge Morrow had said, that she was not – she explicitly stated that she was not taking the 2004 extortion into account. I would also like to point out – Kagan, let's assume that, okay? That she said it, there's no way to dispute that, and so on. But I would just like to correct something that defense counsel has stated, which is that the 2004 extortion was detailed in the PSR for the Judge Morrow case. That is not correct. It is not mentioned either in the PSR for the 2000 and what we call in our briefs the 2003 criminal case, the Judge Morrow case. The extortion in 2004 is not referred to in that PSR, which was disclosed on November 7, 2004, so before the extortion had been revealed. It's not referred to in the addendum to the PSR, and it's not discussed. The recommendation letter of the Probation Office in support of a three-level upward departure in criminal history category also does not refer to that. I'd also like to point out, as a factual matter, that in the original appeal, the appeal from the Judge Morrow sentence, which was before this Court as case number 05-50341, and which defendant has asked this Court to take judicial notice of, that that, the 2004 extortion was not identified as a basis for the upward departure. The upward departure was challenged in that appeal, and the basis identified in that appeal were the 1983 mail fraud conviction. Kagan, so let's assume all that. All right. It seems to me that, as I said before, that the real what doesn't feel quite right about this case is the fact that the indictment was two years later. And as I understand what your opponent is arguing, it's essentially that, although there's no constitutional or other basis for challenging that conviction, that at least post-Booker, that circumstance should be taken into account in the sentence, in that the sentence should not be higher than it would have been had it been timely in charge. And what about that contention? I would submit, Your Honor, that, in fact, Judge Schiavelli, who was acutely aware of Judge Morrow's sentence, that the defendant was also already under a sentence of a combined 143 months, that that was present before Judge Schiavelli when he analyzed the 3553A factors in determining the appropriate sentence here. It was the only issue that was in dispute at the sentencing in Judge Schiavelli's case. There was no dispute about the guideline calculation. There was no dispute about the appropriate that 60 months was the statutory maximum sentence that could be applied. There was no dispute about the criminal history. It was only that issue. So he ---- Kagan. Supposing that the indictment had occurred timely enough for it to be combined with the earlier case, which it could have been, right? I mean, what would have been the appropriate ---- could there have been a 60-month consecutive sentence at that point? Yes. I would suggest that there could have been. And here's how I think that would work. I suppose what would have had to have happened, there would have been another indictment or information filed, and that would have had to go to Judge Morrow and have been addressed in a combined sentencing hearing. Let's assume that that's the situation that Your Honor is asking about. I believe what we would have had in that situation is the guideline ---- those would have been separate offenses. They would not have grouped for purposes of the guideline, the Morrow case being a fraud case, the Schiavelli case being an extortion case. The guidelines for the fraud case before Judge Morrow resulted in a level 24. The guidelines in the extortion case before Judge Schiavelli resulted in a level 23. Applying the multiple count adjustment under 3D ---- Chapter 3, Section D of the guidelines would have resulted in a two-level increase. Therefore, we would have had a combined offense level of 26. Let's assume that the three-level departure had been applied. We'd be at level 29. Defendant, Mr. Komisar, was already in criminal history category 6 before the extortion offense occurred. So at a category 6 offense level 29, the range would have been 151 to 188 months. Now, he did receive acceptance from Judge Morrow, but it's unclear, A, whether he would have received acceptance having committed further crimes while he was awaiting for ---- awaiting sentencing in Judge Morrow's case. It's also unclear whether or not he wouldn't have received an even higher upward departure based on criminal history. So even if these cases had been combined for a consolidated sentencing, I don't believe we can establish beyond doubt or we can't establish that. Let me just say it would be merely speculative to say that he would have ---- Ginsburg. What was the sentence in Judge Morrow's court? Morrow gave the defendant 125 months. He was ---- his range was 77 to 96 months at level 21 with the upward departure of three levels to level 24. The upward result was 125. And sentencing him at the upward end of the range suggests that he may have gotten an even higher upward adjustment if there had been combined ---- combined proceeding there. I'm not sure if the Court does not have any other ---- I would like to just say one thing. I know the Court has already addressed the fact that this was a serious crime. I just would like to address contentions made in defendant's brief and reply brief that this crime could not have been taken seriously and implicitly implying that Judge Schiavelli erred when he concluded under his 3553 analysis that the crime was a serious one. I would like to point the Court to the record to ---- in the record that we have filed at GSER 268 through 275 ---- I'm sorry, through 276, there is the police report filed by the victim in this case following the visit to her home of the associate of Mr. Komisar. There's the police report in which she details that she had been threatened with death if she didn't pay up the $75,000. There are also the memoranda of interview of the victim and her husband, who was a witness. And finally, I would ---- in which, again, she stated that she immediately called 911 after this event occurred. And I would also point out that in paragraph 33 of the plea agreement, Mr. Komisar admitted that the day after this event occurred, he spoke with the man who he sent to the victim's house, and that individual informed him that, yes, the victim was frightened. So I don't think that it would be a problem that Judge Schiavelli made any mistake at all when he concluded that this was a very serious crime that had been committed from a custodial setting while defendant was awaiting an enormous sentence, that he was not deterred by that, that the seriousness of the crime, the potential for recidivism here, the circumstances of the offense, all of those factors led to a sentence at the statutory maximum, because the guideline sentence would have been double that. The judge sentenced inappropriately, we believe. He gave a full statement of his reasons. That is satisfactory. He did not specifically address the consecutive versus concurrent, but he didn't need to. Under Cardi and Rita, it was a simple issue that was before him, not a complex question. It was the only issue before him. He made perfectly clear his reasons for applying the sentence that he did, and for those reasons, we would respectfully request that this Court affirm the sentence. If there are no further questions, I have no further questions. Roberts. One minute, please. The government has suggested a formula that Judge Schiavelli could have used, but he didn't use it, and he didn't explain what would have been done in 2005 had this case been indicted in a timely and prompt manner, and we think it should go back to that purpose. Thank you. Thank you, Judge. The case just argued will be submitted. The next case on the calendar is United States v. McTernan.
judges: Reinhardt, Berzon, Miner